Mr. Belsley for the appellant. Mr. Belsley, I'm appearing this morning on behalf of Cindy Shadrick, the administratrix of the estate of her son, Tyler Butler. I have requested to reserve three minutes for rebuttal. If the court please, I will start with the issue of qualified official immunity. There's really two issues before the court. Qualified official immunity from the state claims of the plaintiff, and whether there was an issue of fact concerning Southern Health Partners deliberate indifference that warranted a jury's consideration and resolution. Let me, if the court please, start with qualified official immunity. Qualified official immunity under Kentucky law traditionally has always extended to public employees and not entities. Since 1898, Kentucky courts have said that a private medical contractor for a county is not entitled to qualified official immunity. That was in the Williams v. Nally case. And that's based on, under state law, the consideration that, or the concern that, an imposition of liability against an individual would ultimately be paid out of public coffers. Here, with regard to that state law analysis, that's not the case. Southern Health Partners is a private for-profit company. It operates in numerous states, in numerous jails, and it indemnifies the jails in which it operates against the consequences of its own negligence. Most particularly recently in Kentucky, in the White v. Southern Health Partners case, White wasn't a qualified official immunity case necessarily, but it did require the court to determine whether the nurses of Southern Health Partners were public employees for purposes of application of the Kentucky Whistleblower Act. And the court said in that case, no, they are not. Southern Health Partners nurses are not public employees. And they cited specifically that Southern Health Partners is an independent contractor engaged to provide medical care to inmates. And that the county did not have the power to direct the conduct of Southern Health Partners nurses. And the court of appeals specifically rejected the nurses' interpretation of the Whistleblower Act as it applied to them, saying, interpretation suggested by the nurses would mean that Southern Health Partners, by contracting to provide medical services to inmates of the county jail, was in fact transformed into a political subdivision of the state. So I believe the state law is clear, and the state court cases are clear, that neither Southern Health Partners or its nurses are public employees and deserving of qualified official immunity. This court, the Sixth Circuit, has on numerous occasions denied qualified immunity to private medical contractors. In the McCollum v. Tepe case, y'all denied it to the physician. In Harrison v. Ashe... Are we talking about Kentucky law now? Well, we're talking just not specifically Kentucky law. I'm just talking, Your Honor, about what this court has done when confronted with similar cases in qualified immunity. And the federal court's rationale is a little bit different from the state court rationale. The rationale for the federal courts is that a for-profit entity like Southern Health Partners doesn't require qualified immunity protection because marketplace pressures provide strong incentives to avoid overly timid, insufficiently vigorous, unduly fearful, or non-arduous employee job performance. That was this court's opinion in Bartell v. Lohyser, and you were quoting specifically from the U.S. Supreme Court opinion in Richardson v. McKnight that dealt with private correctional employees and denied them qualified immunity in those circumstances. So I believe whether you take the Kentucky state law analysis, the federal law analysis, Southern Health Partners is not entitled to qualified official immunity. That's just an easy case. I mean, your position is that persons that work for a private corporation are not entitled to immunity under federal law or state law, just a blanket rule. Is that right? That's in the medical care context, yes, Your Honor. And that also has to do with the fact that in the medical care context, immunity issues tend to examine whether the conduct is discretionary or not. When you're talking about medical care, the courts have made clear that medical care is a ministerial duty, that you're not dealing with a discretionary issue. Okay, now are you limiting your distinction? I mean, I thought you want us to have a broad rule that employees of a private company are never entitled to immunity. Now you want to limit it to medical decisions and medical decisions that are discretionary? No, Your Honor. Tell me where you're drawing the line here. I believe that a private contractor for a jail, providing medical services to that jail, is not entitled to the protection of qualified official immunity. I don't think that's what the law is, but we'll see. Let me turn now to the deliberate indifference issue. Well, why do we have to go there if it's a blanket rule? Well, Your Honor, because the standards are different. The qualified official immunity issue goes to whether we return to court for prosecution of our state negligence and gross negligence claims. We believe that the district court also erred in dismissing our federal 1983 deliberate indifference claims, which is a different question. I thought you just told me that they're entitled to immunity for their federal claims as well. The court held that I was discussing purely the state law claims, Your Honor, on qualified official immunity. I think that's what my question was, but okay. Now you admit that private employers or employees of private companies that do the medical work in jails do have qualified immunity. We have to do the deliberate indifference analysis anyway. It's not a blanket rule that they are immune, right? And I apologize if I've confused these issues, Your Honor. There's two issues as to the state law claims for negligence and gross negligence. The question is whether Southern Health Partners is entitled to qualified official immunity under state law such that this case cannot be returned to the district court for trial of the state law negligence and gross negligence claims. Is part of the basis of your argument the Comair definition by the Kentucky Supreme Court because that two-part test that for an entity to partake of qualified official immunity, it has to have been an entity created by the state? And here what we have is a private corporate entity not created by the state. So it seems that Comair supports that analysis also. It does, Your Honor, as well as the Autry case that was cited by the appellees in their brief where you were dealing with an entity that was created by a state agency, Western Kentucky University, solely for the purpose of holding certain properties of the university. And that's the first prong of the Comair test. That's right. If it's created by the county entity, then it must be created by the county entity to partake of qualified official immunity. And so a privately created for-profit corporation separately incorporated cannot qualify under Comair. Correct, Your Honor. And what we're seeing the courts do is something of an extension of the prior doctrine of qualified official immunity that actually applied just to individuals, public employees. The Kentucky courts have recently, in Autry and in Comair, indicated a willingness to extend that somewhat to entities. But as Your Honor indicates, only to the extent that those entities are essentially created by the state or in Autry where SLF, the entity that was created by WKU to hold those properties, the court described as merely an alter ego. It had no existence beyond WKU, which is not the case here where you've got a for-profit entity that's operating in a number of states and in a number of different jails. With regard to our deliberate indifference argument, that rests on a number of prongs. We've cited to the court other prior cases involving Southern Health Partners in which individuals either died or almost died without the medical director, the physician who was supposed to be overseeing the work in the jail, even knowing they were in the jail. We've also cited to the court the prior history of Mr. Butler himself being in this jail, on one occasion, for example, perhaps the most stark, being treated for severe pain in his chest and in his left arm by an LPN who didn't take his vitals and didn't call the doctor. We also point to the fact that the district court found that Southern Health Partners' nurses were, or at least that there was a genuine issue of material fact as to their deliberate indifference, specifically citing their policy violations that could have caused or could have contributed to Mr. Butler's death. Here you're suing Southern Health Partners and you agree that they are not vicariously liable for the actions of their employees, right? That's correct, Your Honor. They are not. And you do, let's get back to this, and you do concede that the defendant, Southern Health Partners, is entitled to qualified immunity for 1983 absent deliberate indifference, right? No, Your Honor. Southern Health Partners is not entitled to qualified immunity on the deliberate indifference claims because this court has said that the provision of medical care to inmates is clearly established. Why are we going through deliberate indifference then? If you say it's a blanket rule, they're not entitled to immunity. Why are you arguing deliberate indifference? Well, Your Honor, the deliberate indifference issue is, if we can make a deliberate indifference showing to the court, in addition to showing just pure negligence under our state claims, we'd be entitled to recovery of attorney fees, potential recovery, it would improve our chances for recovery of punitive damages. But they're not entitled to immunity on the 1983 claims. Okay, so you're doing this only for attorney fees and costs is why we're arguing deliberate indifference or why we're adjudicating the issue? Well, I'm just telling, Your Honor, the difference in terms of what the two claims are, the state negligence claims as opposed to the federal claim. But I think the implications of being able to show that an entity like Southern Health Partners was deliberately indifferent in the manner in which it trains its employees and operates its business model is significant. Why? For what reason, under your theory, other than attorney fees and punitive damages? That's the only difference in recovery, Your Honor. Okay. Thank you. May it please the Court, Robert Duncan on behalf of Southern Health Partners. The appellee respectfully requests the Court affirm the ruling of the Western District Court judge for two reasons. That is that the district court correctly found that there was no deliberate indifference on the part of Southern Health Partners, and secondly that Southern Health Partners was entitled to qualified immunity. I apologize for being a little disoriented, but Mr. That goes to the federal claim, right? We've got the Kentucky claim too, right? Well, the qualified immunity goes to the Kentucky claim because the district court never addressed the qualified immunity with respect to the federal claims because of its finding that there was no deliberate indifference, therefore it never had to go to that consideration. So we get on the same page. Can we all call the state immunity qualified official immunity? That helps me since Can we separate the claims too? Let's talk about Kentucky claims first. I'm not an expert on Kentucky law. They say there's a blanket rule that private corporations, unless they're created by the state, don't have official immunity under Kentucky law, and that's what the black letter law says. Is that correct or not? That is incorrect. Give me your best case why that's not correct. The Autry v. Western Kentucky University case and the Gerald v. Kroger case. The Autry case Is the Gerald an individual cause of action? It is an individual cause of action, but it makes no distinction between an entity or an individual. It's a contracted third party providing services to the state that acts as a state actor, quote-unquote. But hasn't the qualified immunity law always extended to individuals for the reasons argued by your opposing counsel, that the individual then presents the damages award and the county or the state has to pay for it? And so qualified immunity protects individuals because they're by protecting the state coffers. But qualified immunity, as I understand it, has not been extended to corporate entities because they are separately liable. And here we know they are because they're an independent contractor that has agreed to reimburse the county for any expenditures. So I don't understand how that even fits within the rubric of qualified immunity. Okay, let's take the Autry case with Western Kentucky. There the court said the distinction between private entities and private citizens is a nondistinction. There's no difference. You could have a person employed as an individual who's doing so for profit, for gain. Their interest is the same as the corporation. I'm providing a service. I intend to be compensated for it. I intend to make money doing that. So the interest is the same. The question is what? But I'm sorry, but Autry said that in the context of an alter ego. Correct. Someone that stood in as the state. So the state coffers were liable. Isn't that the distinction that Comair came back and made? Comair, two years later than Autry, came back and said, let's stand back from our law. Let's look back to Burns. Let's stand back and let's articulate correctly what the test is. And what they did was a two-part test. They said, you've got to show that the entity was created by a governmental entity, which it was in Autry. It was an alter ego. Then, if you satisfy that, then you go to look at the function of the entity, whether it was a governmental function. Why here would we ever get to the governmental function entity, since yours is a private corporation incorporated in Delaware, independent contractor to reimburse the state, doesn't pass the Comair test that requires that it be created by a governmental entity. But it does pass that test by virtue of the statutory and regulatory requirements on the state to provide health care to its inmates. The regulatory language says the state must contract with licensed providers, i.e., a licensed health care provider. To provide a governmental function. That's part B. We're talking about part A of the Comair test. Right. And the part A requires that it be an entity created by the government. I don't see how SHP can ever meet that qualification. It's a for-profit entity created and incorporated in Delaware. No different than the psychologist in Gerald, who was not an entity or an individual created by the government. He's a separate third party. But he's a separate third party who looks to the coffers of the state to pay. That's why individuals partake of qualified immunity and why corporate entities that are not created by the state do not. There's a huge distinction in my mind. I don't understand your argument that makes the leap from the wholly historical application of qualified immunity to individuals. I don't see how you can assume that it then is applicable to corporate entities, particularly in light of the Comair test. The public policy reasons behind protecting the coffers applied to the psychologist in Gerald just the same as they do a private corporation. When you say Gerald looked to the state coffers, I don't see that. Gerald was a private individual who could be held accountable and liable just as a private corporation or entity can be. The public policy is to protect the state coffers in the transfer of that liability or responsibility. Either the state's going to be responsible directly by performing the service or through a contracted entity, which the Kentucky regulations and statutes require in this case because of the specifics of medical licensure. So when they transfer that responsibility to this other entity, that entity, by virtue of its contract with the state, could pass that liability back to the state and affect the state coffers. Whether they insure it, whether the state insures it, whether it's paid privately, ultimately that cost will be transferred to the state. So from a public policy reason, there's no distinction between the individual, the third-party entity, the state-created entity. And here we would submit that Southern Health Partners stands in the shoes of the entity like Altree in the Altree case, similar to the Comair case, in that it is in fact a created entity by the county by virtue of the regulatory mandates that say the county must contract with this licensed medical provider. I'm struggling with that because that's not what Comair says. Comair doesn't say, is there regulatory control? It doesn't look to the second part of the test, are you performing a governmental function, until you've satisfied the first part. And the first part seems to me pretty straight up. Are you created by a governmental entity? And a private corporation is not. And I suppose we're haggling over the term created. If you look at the Altree case, Western Kentucky University, by virtue of the corporate law, created an entity. Who created that entity? Western Kentucky created that entity. The Commonwealth of Kentucky did. The state created it. And here you have a completely independent, in Altree you have this created entity by the state for the purpose of rendering that state service, and that's all it did. You have SHP over here under Comair that is a completely separate entity. You provide some services in Kentucky. You provide services in Tennessee. You work across the nation. So I see a distinction. I don't want to waste any more of your time, but I'm not understanding why Comair doesn't control here. Look at the services provided. We're providing that state-required service and nothing more. Under Comair, it was not a required service. They could do it independently. They could do it with a state organization any way they want. Here we're providing a medical service that's required constitutionally, statutorily, and we're doing it under a regulatory process. We don't provide services privately. We don't provide anything other than this state thing, which is exactly analogous to what was happening in Altree when they were providing a service required by the statute on the University of Western Kentucky to provide the dormitory services and the funding for refurbishing those. So it's a very similar process in how it's created. It's different than the Comair where it was a private corporation not doing something that was required constitutionally, but it's more akin to the transportation services, building roads, providing garbage pickup and things like that that are not required. There are private companies doing that, acting under a contract with the state, but not performing state services. Let me go quickly to the deliberate indifference argument. Okay, I think I answered my own question. This is a 1983 claim against the defendant, so they already labeled them as the equivalent of a government entity, and therefore because of that, because 1983 is only against government anyway, that they have to go through the deliberate indifference to find out if they are not entitled to qualified immunity. I think maybe they forgot it's a 1983 claim here. Okay, let's go through it. I think we have to do the deliberate indifference analysis, and they argue that the training of the nurses is so, the lack of training, the inadequacy of the training of the nurses is so obvious that you can infer from that that there is a constitutional violation for failing to train related to inadequate medical care, and why can't you infer something like that? We have no direct evidence, but why can't we make an inference here? The district court made two very important observations there. One was that the conduct of the nurses that seemed to be most egregious to the expert on behalf of the plaintiffs was actually violations of the Southern Health Partners policies and procedures. So it's not that Southern Health Partners did nothing to train them. They actually adopted policies and procedures that were very on point, and they were not followed. Then they looked to say, is there evidence that the reason they didn't follow these policies and procedures was due to lack of training, and there was no evidence before the court to establish that, sufficient evidence to establish their lack of training. So then they looked for the inference. Is there simply enough here to say that we can conclude that obvious minds couldn't differ on this? They found no prior incidences, and the court is well aware that in order to establish that deliberate indifference, there has to be a pattern of conduct, there has to be notice to Southern Health Partners of that pattern of conduct, there has to be tacit approval of that conduct, and then there has to be a causal relationship between that conduct and the outcome or the harm that occurred to the inmate. The court said none of that is here. We don't find sufficient evidence to establish that Southern Health Partners had any of that before it, and in fact the court considered the training and supervision given by the medical team administrator, Angela Pleasant, and determined as a matter of law that Ms. Pleasant had not been deliberately indifferent, had not been negligent, and rendered summary judgment. That summary judgment was not appealed. The claims against the next level of supervision, against the regional administrator, were dismissed. So you have two levels of supervision and... The thing that troubles me the most in this Monell-type claim, you know, I understand your argument. It is a difficult claim to make. There's no question that failure to train is the most difficult of the claims to make. But the president, I think she was president, was Haersline? Haersline, yes. Haersline, thank you. She testified that we have these procedures, we have these rules and these policies, but we leave it to the discretion of the nurses whether they enforce those policies. To me, that is a rather amazing admission, and an admission that I've created this policy that says if this person has this dangerously infected illness, you know, this MSRA, one of the contagious kind of illnesses, here is the rule of what you must do, Ms. LPN. You must do this, you must segregate this person. And then she turns right around and says, but we say to these LPNs who are not RNs and not overseen by doctors there, we say to them, use your discretion. And that's consistent with medical negligence law throughout the country, that guidelines, policies, and procedures adopted by any medical entity in the country are always considered to be exactly that, guidelines, not rules, not strictly enforced, because the medical provider is the first level of that and must exercise discretion. If you have an absolute policy, MRSA policy, that required administration of a certain drug, and the patient was, let's say, allergic to that drug, and it would create an anaphylactic shock, you could not, by not allowing the nurse some discretion in that situation, you could create a more dangerous situation. So for all policies and procedures. But is that discretion to fit the existing policy to the known medical needs, to be exercised by someone who is qualified to exercise that, a physician or someone who understands the medicine behind it, because the testimony was you can apply them or you cannot apply them, which is a discretion to ignore the policies. It must be exercised within the qualifications, experience, and training of the individual interpreting those policies. And if the individual is an LPN who is, by training and by law, not allowed to diagnose, is that not a concerning portion of the rendering of medical care in this case? Absolutely, which is why the policies say when that LPN has questions, they should consult the MTA, who in this case was found not to be negligent or deliberately indifferent, who should consult the regional administrator or the physician. Isn't the record in this case and the preceding cases and the treatment of this very inmate at previous times that these LPNs did not consult anyone else? I would disagree that the record establishes that, but I would make the point, more importantly, that there's no record that Southern Health Partners had any evidence of that, approved of that, that there was tacit approval and so forth under the requirements of the Claiborne County Doe case. Do you consider it tacit approval to have gone back after the inmate died and to look at the way the events occurred and to say there's nothing wrong, everything's fine here? Absolutely not. The cases are fairly clear that post-event ratification is not, or post-event investigation is not evidence of ratification. More importantly, there's no causal element. Obviously, the harm has already occurred at that point in time in the cases with respect to deliberate indifference. Mandate an absolute causal relationship. So even if that were true, it would fail the deliberate indifference test on the causal aspect. That portion, but if what we have is ongoing evidence either through either of the two methodologies of proof, through showing a pattern or practice, or through something that is so significant on a singular event that it would place this SHP on notice, I'm struggling with why there is not sufficient evidence to say that there are material differences in the record before us that require that the case go forward. Give me your best argument for why this grant to the nurses, this evidence of no calling of the doctors, the fact that there was no training other than following another LPN for a day or two, why that's not sufficient to say that there's a dispute of fact as to the Monell claim. I want to make an important distinction because the court asked first about post-event investigation and then tied that to these other claims. First of all, there's... I'm sorry, fair question. I tied it because it's evidence of knowledge. Ms. Hairslip testified that I have reviewed the record of every inmate who died. That means she, the very top person in this organization, knows what happened in every inmate death, and that is part of the deliberate indifference test, whether there was knowledge and it was disregarded. And I appreciate the court's comments on that with respect to all of that except the last. There was no evidence presented to the district court that those investigations resulted in the harm to the inmates or the conduct being disregarded, and that is significant. There's no prior evidence, no evidence of a pattern, and I would suggest that the court look at the cases interpreting Monell that look, I think the Atkins case maybe, West v. Atkins, the significance of those, recognize, as the court did, that Southern Health Partners is in 14 states, 30 counties in Kentucky, hundreds of thousands of inmates literally, and there's absolutely no indication that there's a pattern of conduct of this occurring Appellants have cited prior care to Mr. Butler, but no specifics of that, no harm occurring of that, nothing that would suggest that there was a deliberate indifference that Southern Health Partners was aware of. And three other cases, one of which a jury has found not only was there no deliberate indifference, but there was no negligence. Two other cases that are easily distinguishable because the claims were nowhere near what we're talking about here of a pattern of conduct of not training or supervising the nurses. So I would suggest to you that the district court was on solid foundation in saying we just have insufficient evidence here of anything that would create the required knowledge that the deliberate indifference standard imposes. Thank you. All right, any further questions? All right, thank you, counsel. We've got three minutes of rebuttal. Thank you, Your Honors. First, with regard to the statutory and regulatory language that opposing counsel referenced in support of his argument that Southern Health Partners should be given qualified official immunity from plaintiff's state claims, that statutory and regulatory language obviously made no difference to the court in the White v. Southern Health Partners case. In which Southern Health Partners was arguing as part of its defense that its employees were not public employees. Second, proof of knowledge of prior incidents is not required. This court said in Hireman v. County of Calhoun that a failure to train or supervise claim can be established, one, by proof of actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, or, or, two, the fact that the constitutional violation alleged was a patently obvious and highly predictable consequence of inadequate training. And when Your Honor, Judge Strand, cites to the language of Ms. Hairsine, saying, well, we've got policies and procedures, but we leave it to LPNs to decide whether they're going to follow them or not, that falls directly into that second rule, that the constitutional violation is a clearly highly predictable consequence, particularly when you put together the history of the other cases, the prior cases we cited, Mr. Butler's own treatment in prior incarcerations, and the myriad policy violations, the blatant policy violations, in his treatment in this case. Judge McKinley denied Southern Health Partners' nurses qualified immunity on our federal claims, saying that they, a jury could find they were deliberately indifferent. He denied them qualified official immunity on our state claims because he said that their duties were ministerial and because deliberate indifference would be proof of the bad faith that could also void qualified official immunity. We believe that the district court erred by granting Southern Health Partners summary judgment and letting them out for conduct that was clearly traceable to its own employees' misconduct. Traceable? I mean, so you're arguing by serious liability now? No, Your Honor. I'm saying that Southern Health Partners' failure to train, its failure to supervise, clearly establishes under the facts that we've got in the record in this case that it is liable not only on our state claims, but also by our federal claims. All right, any further questions? All right, thank you, counsel. The case will be submitted. It's my understanding the remaining cases will be submitted on briefs. You may adjourn the court.